## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| GREGORY M. KLOCH, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | 4:05CV3018 |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| RANDY T. KOHL, M.D., et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the plaintiff's Motion to Compel (Filing No. 42). The plaintiff filed a brief (Filing No. 43), a reply brief (Filing No. 54), and an index of evidence (Filing No. 44) in support of the motion.  The defendants filed a brief (Filing No. 51) and an index of evidence (Filing No. 52) in opposition to the motion.

## BACKGROUND

This is an action for declaratory and injunctive relief and damages for deprivation of constitutional rights under 42 U.S.C. § 1983.  The plaintiff alleges he was not afforded procedural due process in connection with the placement of a "letter of concern" in his public record pursuant to the Nebraska's Uniform Licensing Law, Neb. Rev. Stat. § 71-101, *et seq.*  The plaintiff is a physician licensed to practice in Nebraska.  The defendants are the Attorney General of Nebraska, the Director and Acting Director of the Nebraska Department of Health and Human Services Regulation and Licensure (Department), and members of the Nebraska Board of Medicine and Surgery (Board of Medicine).  The defendants have been sued in their official and individual capacities.

In his complaint, the plaintiff challenges provisions of the Uniform Licensing Law as unconstitutional.  The plaintiff alleges that the Board of Medicine is responsible for and regulates the practice of medicine and surgery in the State of Nebraska.  The Board of Medicine has the power and authority to review and investigate complaints against physicians, and to recommend disciplinary action to the Nebraska Attorney General.  The Department oversees the general administration of the activities of the Board of Medicine, initiates investigations against physicians, and consults with the Board the Medicine

regarding recommendations for submission to the Attorney General.   The Uniform Licensing law governs the investigative, prosecutorial, and disciplinary process employed by the Department and the Board of Medicine.  All physicians licensed to practice medicine in Nebraska are subject to the Uniform Licensing Law.

The plaintiff alleges that, under the statute, no disciplinary measures can be imposed without first affording a physician due process.  Disciplinary measures include censure, revocation, suspension of or limitations upon a physician's license.  However, the statute also authorizes nondisciplinary "letter of concerns," which include a statement of the statute, rule or regulation in question and a statement advising the credentialed person of the conduct that would violate the statute, rule or regulation.  The letter is signed by the Board of Medicine and becomes part of the public record maintained on the physician. The letter can be considered in future disciplinary actions.

The plaintiff alleges that he received a letter of concern on or about August 5, 2002. The letter of concern was made a part of his public record, is referenced on the Department's website and is available to the public upon request.  The plaintiff also alleges that the Nebraska Administrative Procedures Act specifically forecloses judicial review of the letter of concern.  The plaintiff alleges that he was subject to public censure and has been denied the right to a "clean" medical license. He further asserts that his reputation, good name and honor have been damaged and he has been denied the right to practice his profession without unwarranted interference by state officials.

On January 17, 2006, the plaintiff served the defendants with discovery requests. **See** Filing No. 23 - Certificate of Service.  On March 24, 2006, the defendants served responses to the requests for production.  **See** Filing No. 28 - Certificate of Service.  On April 4, 2006, the defendants served responses to interrogatories.  **See** Filing No. 30 - Certificate of Service.  On April 11, 2006, the defendants served the plaintiff with a privilege log regarding withheld documents.  **See** Filing No. 31 - Certificate of Service.  The parties both state counsel has made good faith attempts to resolve this discovery dispute without court involvement.  On April 28, 2006, the court entered an order staying discovery until the merits of the defendants' motion for summary judgment was resolved, except where

2

discovery was necessary to respond to the motion for summary judgment.  **See** Filing No. 39.

## ANALYSIS

The plaintiff seeks to have the court overrule the defendants' objections to Interrogatory Nos. 4, 6, 9, 11 and 12 and Request for Production Nos. 3 and 6 and require the defendants to supplement these responses.  **See** Filing No. 54 p. 13.  Additionally, the plaintiff argues that in the defendants' discovery responses and privilege log, the defendants have unsubstantiated objections to disclosing the investigation file related to the plaintiff.  **See** Filing No. 42 ¶ 8.  The court will address each of these discovery requests below.

**A.      Interrogatories**

Federal Rule of Civil Procedure 33 provides:

> (b)(1) Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable.
>
> * * * *
>
> (b)(4) All grounds for an objection to an interrogatory shall be stated with specificity.  Any ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause shown.

Fed. R. Civ. P. 33.  The Advisory Committee Notes state that "objections must be specifically justified, and . . . unstated or untimely grounds for objection ordinarily are waived."  ***Advisory Committee Notes, Fed. R. Civ. P. 33*** (1993 Amendments).

The party opposing a motion to compel has the burden of showing its objections are valid by providing specific explanations or factual support as to how each discovery request is improper.  ***St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.***, 198 F.R.D. 508, 511-12 (N.D. Iowa 2000) (objecting party has the burden to substantiate its objections).  Bare assertions that discovery requested is overly broad, unduly burdensome, oppressive or irrelevant are ordinarily insufficient to bar production.  ***Id.***  "The party resisting discovery

3

must show specifically how . . . each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome or oppressive." *Id.* (citations omitted). The party resisting discovery has the burden to show facts justifying its objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome.  **See** *Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 610 (D. Neb. 2001).  This imposes an obligation to provide sufficient detail and explanation about the nature of the burden in terms of time, money and procedure required to produce the requested documents.  **See** *id.*

"Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).  "To assess relevance in a given case, the court must view the matter in light of the specific claims and defenses asserted by the parties." *Fletcher v. Atex, Inc.*, 156 F.R.D. 45, 48 (S.D.N.Y. 1994) (citations omitted).  "[I]t is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken." *Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) (**citing** *Oppenheimer Fund*, 437 U.S. at 351-52).  In the end, however, courts have "wide discretion with respect to discovery matters." *Spangler v. Sears, Roebuck and Co.*, 138 F.R.D. 122, 123 (S.D. Ind. 1991) (citations omitted); **see** *Credit Lyonnais v. SGC Int'l, Inc.*, 160 F.3d 428, 431 (8th Cir. 1998).

It is insufficient for the party objecting to discovery based on relevance to simply make conclusory allegations that the request is irrelevant.  *Burnett v. Western Res. Inc.*, CIV. A. No. 95-2145-EEO, 1996 WL 134830, *4 (D. Kan. Mar. 21, 1996).  If the discovery sought appears relevant, the opposing party bears the burden of specifically showing how each discovery request is irrelevant.  *Id.*  However, a threshold showing of relevance is necessary before production of information, which does not reasonably bear on the issues in the case, is required.  *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1993). Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case.  **See** *Cervantes v. Time, Inc.*, 464 F.2d 986, 994 (8th Cir. 1972).  Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings.  Relevancy, for purposes

4

of discovery, has been defined by the United States Supreme Court as encompassing "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." ***Oppenheimer Fund***, 437 U.S. at 351.  Discovery requests should be considered relevant if there is any possibility that the information sought is relevant to any issue in the case and should ordinarily be allowed, unless it is clear that the information sought can have no possible bearing on the subject matter of the action. **See *Marker v. Union Fidelity Life Ins. Co.***, 125 F.R.D. 121 (M.D.N.C. 1989); ***Morse Diesel, Inc. v. Fidelity & Deposit Co.***, 122 F.R.D. 447 (S.D.N.Y. 1988).

Interrogatory No. 4 states:  "Describe the investigative process involved prior to the issuance of a public censure."  Interrogatory No. 6 states:  "Describe the process utilized by the State Board of Medicine in making findings and recommendations to the Attorney General concerning public censure."  Interrogatory No. 12 states:  "How are public censures issued and to whom are they disseminated?"  The defendants responded to each of these interrogatories by objecting on the basis of relevance, then stating:  "Without waiving said objection, the issuance of a censure [by the Board] is a disciplinary sanction against the professional's license as provided by the Uniform Licensing Law, Neb. Rev. Stat. § 71-101 et seq."  **See** Filing No. 44, Exhibit A (bracketed language in response to Interrogatory No. 6 only).

Interrogatory Nos. 4 and 6 seek the same information, albeit about a Letter of Concern, sought in Interrogatory No. 5, which the defendants answered, and Interrogatory No. 3, with the defendants answered, over their own objection.  The defendants' full responses to Interrogatory Nos. 3 and 5 appear to succinctly answer the questions posed. In contrast, the defendants' responses to Interrogatory Nos. 4, 6 and 12 are not responsive. Further, the defendants fail to meet their burden of showing the interrogatories are not likely to lead to any relevant information.  Accordingly, the defendants' objections are overruled and the defendants shall provide supplemental responses to Interrogatory Nos. 4, 6 and 12.

Interrogatory No. 9 states:  "How is 'public censure' defined by each defendant named in this suit."  The defendants objected based on relevance, then went on to state:

5

> Without waiving said objection, the term "public censure" is a term used by the plaintiff, not by the defendants. The defendants assume the plaintiff is referring to the word "censure", which is a statutory term for a specific disciplinary sanction against a licensed health care professional as stated in Neb. Rev. Stat. Section 71.155(1)(a). Nebraska law provides that disciplinary sanctions are public information. The plaintiff did not receive a "censure" nor did the Medical Board issue a disciplinary "censure" to the plaintiff.

**See** Filing No. 44, Exhibit A.

Although the defendants waived their objection by answering Interrogatory No. 9, it appears they fully responded. The plaintiff does not explain what further response should be provided. No additional response will be required.

Interrogatory No. 11 states: "What is the difference between a public censure and a Non-Disciplinary Letter of Concern." The defendants did not object to Interrogatory No. 11. The defendants did provide a written response. The plaintiff does not describe how the defendants' response is insufficient. Accordingly, the plaintiff's motion to compel will be denied with regard to Interrogatory No. 11.

## B.   Request for Production

With regard to production of documents and things, Fed. R. Civ. P. 34(b) provides:

> The party upon whom the request is served shall serve a written response within 30 days after the service of the request. . . . The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for the objection shall be stated. If objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts.

**See** Fed. R. Civ. P. 34(b). The District Court has discretion to limit the scope of discovery, if it has a good reason to do so. ***Credit Lyonnais***, 160 F.3d at 431.

Request for Production No. 6 seeks: "All internal policies, procedures, memoranda, rules, regulations, manuals, or similar materials, whether formal or informal, governing the process of issuing public censures to physicians." The defendants responded:

> Objection. Plaintiff's request is irrelevant and not likely to lead to relevant information as Plaintiff received a non-disciplinary letter of concern, not a public censure which is a disciplinary measure under Nebraska statutes. Without waiving said objection, the Uniform Licensing Law found at Neb. Rev. Stat. § 71-101 et seq. governs the process of issuing public censures to physicians.

**See** Filing No. 44, Exhibit B.

Although the plaintiff received a Letter of Concern rather than a censure, the plaintiff's arguments rest on the differences in procedure and process between the two. Accordingly, the plaintiff has met his burden of showing the request seeks documents which reasonably bear on the issues raised for summary judgment. Accordingly, the defendants' objection is overruled. The defendants' response is insufficient. The defendants shall supplement their response to Request for Production No. 6 by specifying the section of the Uniform Licensing Law upon which it relies and/or by producing all responsive documents. If the defendants have no other responsive documents in their possession, they should so state.

Request for Production No. 3 seeks: "All audiotapes or videotapes made in connection with the investigation which led to the issuance of a letter of concern to plaintiff on or about August 5, 2002, including any typed transcriptions thereof." The defendants objected to Request for Production No. 3 on the basis of Neb. Rev. Stat. § 71-168.01, then stated: "Further, without waiving said objection, no audiotapes or videotapes or typed transcriptions thereof were made by the Board in connection with the investigation which led to the issuance of a letter of concern to plaintiff on or about August 5, 2002." **See** Filing No. 44, Exhibit B.

The plaintiff contends he should be entitled, at least, to his own statements in order to rebut the defendants' contention he was afforded all the process he was due. **See** Filing No. 42, p. 5. Additionally, the plaintiff suggests the defendants are obscuring their response by stating the "Board" made no such tapes "during the investigative process." Specifically, the plaintiff states he attempted to respond to investigators on two occasions, once during a telephone conference and once through a face-to-face meeting, which was taped. ***Id.*** The plaintiff argues the defendants' documents are contradictory about whether

7

the plaintiff provided a response.  In the James Smith affidavit filed in support of the defendants' Motion for Summary Judgment, Mr. Smith states the plaintiff was invited to submit a response, but declined to do so.  **See** Filing No. 38, Exhibit 1, ¶ 15.  In apparent contrast, the letter of concern sent to the plaintiff states, "[the plaintiff] responded to the notice [of a complaint being filed against him] by telephone."  **See** Filing No. 38, Exhibit 1(A).  Mr. Smith also describes the series of events whereby the plaintiff initially responded to the notice of a complaint by telephone, then appeared before the Board of Medicine <u>after</u> it issued the letter of concern, in an attempt to have the letter rescinded.

Without deciding the issue of privilege with regard to this request, the plaintiff's motion to compel must be denied.  The request made was for recordings made which led to the issuance of the letter of concern.  The defendants cannot produce recordings they do have or which does not exist.  **See _Byrd v. Reno_**, NO. CIV.A.96-2375CKK JMF, 1998 WL 429676, *17 (D.D.C. Feb 12, 1998) (The court cannot compel what the party does not have.).  The plaintiff does not allege the initial telephone conference was recorded.  Although, the plaintiff alleges a face-to-face meeting was recorded, Mr. Smith states the meeting occurred after the letter of concern was issued.  Accordingly, the plaintiff has failed to show the defendants are in possession, custody or control of any responsive recordings and that the defendants have fully responded to Request for Production No. 3.  For these reasons, the plaintiff's motion to compel a supplemental response to Request for Production No. 3 is denied.

## C.   Privilege Log / Request for Production Nos. 1 and 2

Request for Production No. 1 seeks: "The entire investigative file pertaining to the investigation which led to the issuance of a letter of concern to plaintiff on or about August 5, 2002, including the findings and recommendations of the State Board of Medicine and the findings and recommendations of the Attorney General."  **See** Filing No. 44, Exhibit B.  The defendants responded:

> Objection.  Plaintiff's request seeks confidential documents that under Neb. Rev. Stat. § 71-168.01, shall not be public records, shall not be subject to subpoena or discovery, and shall be inadmissible in evidence in any legal proceeding of any kind or

8

> character except a contested case before the department. Accordingly, Defendants are barred by statute from disclosing the investigative file. Further, the documents contained in the investigative file are protected by the attorney/client and/or work product privileges.

*Id.*

Request for Production No. 2 seeks: "All correspondence or electronic transmissions between or among any of the named defendants, their agents, or employees concerning in any way the investigation, findings or recommendations which led to the issuance of a Letter of Concern to plaintiff on or about August 5, 2002." **See** Filing No. 44, Exhibit B. The defendants made the same objection as given to Request for Production No. 1.

In connection with the objections to Request for Production Nos. 1 and 2, the defendants served the plaintiff with a privilege log. The defendants' privilege log list five categories of documents including two separate collections of "Notes from closed sessions" by different authors regarding the meeting of the Board of Medicine with regard to the investigation of the plaintiff and the recommendations; a string of emails which comprise the records of investigation of the plaintiff; a report regarding the plaintiff; and an investigation file regarding the plaintiff. **See** Filing No. 44, Exhibit C. The defendants listed objections based on relevance and Neb. Rev. Stat. § 71-168.01, for each category. The defendants also list the work product privilege and the attorney client and common interest privilege, as defined in Neb. Rev. Stat. § 27.503 (1995), for the string of emails and investigation file.

Further, the plaintiff states he agrees to the entry of a protective order restricting the use and/or re-release of the requested discovery. Additionally, the plaintiff states he has no need to learn the identity of the party or parties who made the complaint to the Department. The defendants filed an earlier proposed draft protective order for three specific documents: (1) a note to the investigative file regarding a telephone call with the plaintiff before the issuance of the letter of concern; (2) a letter to the plaintiff dated May 7, 2002; and (3) the recommendation from the Board of Medicine to the Attorney General dated June 7, 2002. **See** Filing No. 52, Exhibit 1(A).

9

1.      **Relevance**

The plaintiff alleges that the defendants are publically censuring physicians and calling the censures non-disciplinary letters of concern in order to avoid due process hearings, which are required by statute prior to the issuance of a censure. The defendants' motion for summary judgment raises the defense of qualified immunity specifically challenging whether the plaintiff had a right to due process. The defendants argue the plaintiff cannot show he suffered a deprivation of either a property interest or a liberty interest. In the alternative, the defendants contend the plaintiff received all process which was due because he received notice of the investigation, was offered an opportunity to submit a response, and after receiving the Letter of Concern the plaintiff was given the opportunity to appear before the Board of Medicine to request rescission. The defendants also contend the plaintiff cannot show his claimed right was clearly established. Finally, the defendants' contend the plaintiff cannot raise a genuine issue of material fact as to whether the government officials knew or should have known the alleged conduct violated a clearly established right.

The plaintiff contends his discovery requests are relevant to the last issue. The plaintiff argues that to determine whether there is a factual basis for the defendants' knowledge, he must obtain the defendants' documentation reflecting the process of investigation, board review and recommendation, and issuance of the plaintiff's Letter of Concern. Further, the plaintiff shows the defendants argue in their brief supporting summary judgment that the plaintiff received any process due him, based on the facts of the plaintiff's case. Additionally, the defendants state in their summary judgment brief that it was Mr. Smith's "conclusion that the Medical Board's concerns were warranted, supported, and verified by the Department investigation that had been submitted." **See** Filing No. 37, p. 8.

The defendants contend the plaintiff's investigative file is not relevant because the plaintiff is challenging the Board of Medicine's statutory process, rather than the merits of issuing the Letter of Concern to the plaintiff based on the factual underpinnings or decision-making process during the plaintiff's investigation. The court agrees. The issue of whether or not the underlying complaint sent to the Board of Medicine was actually true or

10

substantiated is not relevant to the motion for summary judgment based on qualified immunity. However, the fact of the Letter of Concern, its content, and other documents related to the process allegedly received by the plaintiff would reasonably bear on the issues raised by the defendants' motion for summary judgment. Accordingly, the defendants' relevance objection is sustained with regard to the documents sought related to the investigative file and deliberative process underlying the decision to issue the plaintiff a Letter of Concern. However, the defendants shall produce the relevant documents they previously agreed to produce pursuant to a protective order, namely: (1) a note to the investigative file regarding a telephone call with the plaintiff before the issuance of the letter of concern; (2) a letter to the plaintiff dated May 7, 2002; and (3) the recommendation from the Board of Medicine to the Attorney General dated June 7, 2002.

Based on the court's determination as to relevance, the court need not resolve the parties' dispute related to the applicability of Neb. Rev. Stat. § 71-168.01, the work product privilege or the attorney client and common interest privilege, as defined in Neb. Rev. Stat. § 27.503.


D.      **Sanctions**

With regard to motions to compel discovery responses, under Federal Rule of Civil Procedure 37(a)(4)(C):

> If the motion is granted in part and denied in part, the court . . . may, after affording an opportunity to be heard, apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner.

Under the circumstances present here and since the plaintiff's motion was granted, in part and denied, in part, the court will not assess sanctions against either party. Upon consideration,


**IT IS ORDERED:**

1.      The plaintiff's Motion to Compel (Filing No. 42) is granted with regard to Interrogatory Nos. 4, 6 and 12, and Request for Production No. 6. The motion is denied with respect to Interrogatory Nos. 9 and 11, and Request for Production No. 3. The motion

is granted, in part, as to Request for Production Nos. 1 and 2, with regard to the three documents more fully described above, and denied in all other respects.

2.     The defendants shall have to **on or before October 16, 2006**, to file supplemental responses to Interrogatory Nos. 4, 6 and 12, and Request for Production Nos. 1, 2 and 6.  Prior to production, the parties shall confer regarding an appropriate protective order and file a motion with the court for protection of documents pursuant to Fed. R. Civ. P. 26(c), if necessary.  To the extent the parties are unable to agree on the text of a protective order, each party shall file a proposed version with the joint motion.

3.     The plaintiff shall have to **on or before October 30, 2006**, to file a response to the defendants' Motion for Summary Judgment (Filing No. 36).

## ADMONITION

Pursuant to NECivR 72.2 any appeal of this Order shall be filed with the Clerk of the Court within ten (10) business days after being served with a copy of this Order.  Failure to timely appeal may constitute a waiver of any objection to the Order.  The brief in support of any appeal shall be filed at the time of filing such appeal.  Failure to file a brief in support of any appeal may be deemed an abandonment of the appeal.

DATED this 28th day of September, 2006.

BY THE COURT:

 s/Thomas D. Thalken
United States Magistrate Judge