IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| GREGORY M. KLOCH, | ) | |
| | ) | |
| Plaintiff, | ) | 4:05CV3018 |
| | ) | |
| V. | ) | |
| | ) | MEMORANDUM AND ORDER |
| RANDY T. KOHL, JOSEPH C. SCOTT | ) | |
| JR., ARTHUR A. WEAVER, KATHRYN | ) | |
| KAHLA, JOHN L. REED, GORDON D. | ) | |
| ADAMS, DAVID A. DRYBURGH, | ) | |
| MICHAEL A. SITORIUS, DEBRA J. | ) | |
| FORD, JON C. BRUNING, RICHARD | ) | |
| NELSON, RICHARD RAYMOND, and | ) | |
| SUCCESSORS OF THE FOREGOING | ) | |
| INDIVIDUALS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on defendants' motion for summary judgment, Filing No. 36, as well as plaintiff Gregory M. Kloch's ("Dr. Kloch") motion for partial summary judgment, Filing No. 59. Under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, Dr. Kloch alleges violations of due process in relation to a "letter of concern" made a part of Dr. Kloch's public record pursuant to Nebraska's Uniform Licensing Law, Neb. Rev. Stat. § 71-101 *et seq.* ("Uniform Licensing Law"). Jurisdiction is proper under 28 U.S.C. § 1331, providing this court original jurisdiction over all civil actions arising under the Constitution and laws of the United States.

After reviewing the motions, briefs, and evidence in this case, the court finds that section 71-171.02 of Nebraska's Uniform Licensing Law is unconstitutional as it lacks the necessary due process requirements of notice and an opportunity to be heard prior to

issuance of a letter of concern.  The court further finds that as to issues of immunity, Attorney General Bruning is not entitled to immunity from his role in enforcing an invalid and unconstitutional licensing scheme.  Accordingly, the court grants declaratory and injunctive relief and orders Attorney General Bruning to cease implementing the applicable statutory provisions, regulations, and practices relating to letters of concern, and orders Bruning and the Nebraska Department of Health and Human Services Regulation and Licensure to cease disseminating the letter of concern issued to Dr. Kloch, rescind the letter, and expunge any references to the letter from Dr. Kloch's public records.

Dr. Kloch, a resident of Lexington, Nebraska, practices medicine in Lexington and holds a valid license to practice medicine and surgery in the state of Nebraska.  As such, Dr. Kloch is subject to the Uniform Licensing Law, a collective title that includes the investigative, prosecutorial, and disciplinary laws related to health professionals.  Dr. Kloch maintains the Uniform Licensing Law permits the Nebraska Board of Medicine and Surgery ("Board") to regulate the practice of medicine in the state of Nebraska.  The Board is also tasked with screening complaints against physicians and making findings and recommendations concerning discipline to the Nebraska Attorney General.  The Nebraska Department of Health and Human Services Regulation and Licensure ("Department") functions as the Board's administrator and investigates complaints against physicians. After an investigation is complete, the Department consults with the Board to make its recommendations for submission to the Attorney General.  The Attorney General then determines what statutes, rules, or regulations the physician violated and the appropriate action to take against the physician.  Disciplinary measures include censure, revocation, and suspension of or limitations upon a physician's license, but a physician cannot be

2

disciplined without due process of law.   The Attorney General may also refer the disciplinary issue back to the Board to resolve the matter with issuance of a "letter of concern," a nondisciplinary statement of the statute, rule, or regulation in question and a message advising the physician of the conduct that would violate such statute, rule, or regulation.   The letter of concern is signed by the Board, and may be considered in any future disciplinary actions against the physician.   Additionally, the letter of concern becomes part of the public record of the physician, is available on the Department's website, and may be furnished to anyone who requests it from the Department.   *See* Neb. Rev. Stat. § 71-171.02 (2007).

Dr. Kloch maintains that he received a letter from Susanne Rydberg, R.N., informing him that a complaint has been issued against him, and the Board reviewed the complaint and decided to open an investigation.   In this letter, Nurse Rydberg requests that Dr. Kloch send her his Curriculum Vitae, and call her with any questions as Nurse Rydberg had been assigned as the investigator.   Filing No. 60, Attachment 1 ("exhibit 2A").   Dr. Kloch asserts that he contacted Nurse Rydberg who informed of the name of the patient involved, but did not tell Dr. Kloch the reason for the investigation or the nature of Nurse Rydberg's investigation.   Dr. Kloch alleges that he had an unblemished professional reputation until August 5, 2002, when he received a letter of concern from the Board informing him that the Department investigated Dr. Kloch regarding alleged improper medical records.   Dr. Kloch maintains that he did not receive an opportunity to respond to the allegations.   According to Dr. Kloch, the letter of concern he received is a matter of public record, reflected on the Department's website, and can be made available to anyone who requests it from the Department.   Dr. Kloch further maintains that the Nebraska Administrative Procedures Act

3

specifically forecloses judicial review of the letter of concern. *See* Neb. Rev. Stat. § 84-919 (2007).

Dr. Kloch attended the October 4, 2002, Board meeting, addressed the Board for five minutes, denied the allegations against him, and requested that the Board rescind the letter. Dr. Kloch maintains that he was not allowed to call witnesses to testify, adduce evidence to rebut the allegations, testify on his own behalf, cross-examine witnesses against him, or have the matter decided by an impartial decision maker. On August 13, 2004, with his attorney, Dr. Kloch attended a Board meeting and addressed the Board for ten minutes. Dr. Kloch again denied the allegations, asked the Board to rescind the letter, and was not allowed to call witnesses, adduce evidence to rebut the charges against him, testify on his own behalf, cross-examine witnesses against him, or have the matter determined by an impartial decision maker. The Board did not rescind the letter of concern.

Dr. Kloch brought suit in this court against the following Board members in both their individual and official capacities: John Reed, M.D., Randy T. Kohl, M.D., Joseph C. Scott, Jr., Arthur A. Weaver, D.O., Kathryn Kahla, David A. Dryburgh, Gordon D. Adams, M.D., Michael A. Sitorius, M.D., and Debra J. Ford. In addition to the Board members, Dr. Kloch included as defendants, in both their individual and official capacities, Jon C. Bruning, Attorney General for the State of Nebraska, Richard Nelson, past director of the Department, and Richard Raymond, acting director of the Department. Pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201, Dr. Kloch brought suit against these defendants alleging that the defendants acted under color of law to deprive him of his due process

rights afforded by Nebraska Constitution article I, section 3,[1] and United States Constitution amendments V[2] and XIV.[3]  Dr. Kloch contends that on its face, the Uniform Licensing Law violates the due process clauses of the United States Constitution and the Nebraska Constitution (Claim I).  Dr. Kloch further claims that defendants applied the Uniform Licensing Law and subjected him to disciplinary measures, including public censure, without due process of law, in violation of his liberty and property rights (Claim II).  In his third claim, Dr. Kloch alleges that because he received neither pre-deprivation nor post-deprivation remedies, issuance of the letter of concern violated his constitutional rights (Claim III).  Dr. Kloch further alleges that if defendants are allowed to continue their purported unlawful actions, without due process of law, Dr. Kloch will continue to suffer irreparable harm for which there are no adequate remedies at law; he will be subjected to ongoing sanctions, including public censure; he will be denied a "clean" medical license, as well as the right to pursue his medical profession free from unconstitutional intrusions or interference by state officials; and Dr. Kloch will suffer damage to his "good name, reputation and honor" (Claim IV).

Dr. Kloch requests that this court declare the Uniform Licensing Law unconstitutional on its face and as it is applied to him; enjoin the defendants and successors from continuing to implement applicable statutory provisions, regulations, and practices; and

---

[1]"No person shall be deprived of life, liberty, or property, without due process of law, nor be denied equal protection of the laws."  Neb. Const. art I, § 3.

[2]"No person shall . . . be deprived of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. V.

[3]"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.

direct defendants to enjoin defendants from disseminating the letter of concern issued to Dr. Kloch, rescind the letter, and expunge any references to the letter from Dr. Kloch's public records.  Dr. Kloch further prays that this court declare defendants' practices and procedures unconstitutional; award Dr. Kloch attorney fees and costs; award Dr. Kloch general damages for injury to his "good name, reputation, and honor," as well as general damages for his inability to practice his profession without interference; and any other relief the court deems appropriate.  Defendants subsequently filed a motion to dismiss, Filing No. 10, and the court granted defendants' motion to dismiss Dr. Kloch's claim for damages against defendants in their official capacities.  Filing No. 18.  The court denied defendants' motion to dismiss as to Dr. Kloch's remaining claims.

**Dr. Kloch's Motion for Partial Summary Judgment,** Filing No. 59

Dr. Kloch filed a motion for partial summary judgment contending that he is entitled to judgment as a matter of law on his facial and "as applied" challenges to the Uniform Licensing Law, as well as his due process claim.  Filing No. 61.  In Dr. Kloch's motion for partial summary judgment, he contends Nebraska Revised Statutes §§ 71-171.01 & 171.02(1) (collectively, "the statutes") are facially invalid because the statutes are unconstitutional in every conceivable application.  Section 71-171.01 states that

> [t]he department shall provide the Attorney General with a copy of all complaints it receives and advise the Attorney General of investigations it makes which may involve any possible violation of statutes or rules and regulations by the credentialed person. The Attorney General shall then determine which, if any, statutes, rules, or regulations the credentialed person has violated and the appropriate legal action to take. The Attorney General may: (1) Elect to file a petition under section 71-150 or not to file a petition; (2) negotiate a voluntary surrender or voluntary limitation pursuant to section 71-161.11; or (3) in cases involving a technical or insubstantial violation, refer the matter to the appropriate professional board for the opportunity to resolve the matter by issuance of a letter of concern or to

6

recommend to the Attorney General that he or she enter into an assurance of compliance with the credentialed person in lieu of filing a petition. Neither a letter of concern nor an assurance of compliance shall constitute discipline against a credentialed person.

Neb. Rev. Stat. § 71-171.01 (2006).  Section 71-171.02 in turn, provides that

[u]pon referral of a matter under section 71-171.01 by the Attorney General, the professional board may:

(1) Send to the credentialed person a letter of concern, approved by the Attorney General, which includes a statement of the statute, rule, or regulation in question and a statement advising the credentialed person of the conduct that would violate such statute, rule, or regulation. Such letter shall be signed by the board and shall become a part of the public record of the credentialed person;

(2) Advise the Attorney General on the content of an agreement to serve as the basis of an assurance of compliance. The Attorney General may contact the credentialed person to reach, by voluntary agreement, an assurance of compliance. The assurance shall include a statement of the statute, rule, or regulation in question, a description of the conduct that would violate such statute, rule, or regulation, the assurance of the credentialed person that he or she will not engage in such conduct, and acknowledgment by the credentialed person that violation of the assurance constitutes unprofessional conduct as provided by subdivision (17) of section 71-148. Such assurance shall be signed by the credentialed person and shall become a part of the public record of the credentialed person. The credentialed person shall not be required to admit to any violation of the law and the assurance shall not be construed as such an admission; or

(3) Recommend that the Attorney General file a petition under section 71-150.

Neb. Rev. Stat. § 71-171.02 (2006).

According to Dr. Kloch, the statutes allow the Attorney General and the Board to commit public censure without due process of law simply by referring to the censure as a "letter of concern."  Dr. Kloch further maintains the statutes are arbitrary, capricious, and not rationally related to a legitimate government interest.  Dr. Kloch alleges he is irreparably harmed due to lack of meaningful opportunity to respond to the allegations, no right to a

7

hearing, and no right to appellate review.  As such, Dr. Kloch requests that this court grant him summary judgment as no genuine issue of material fact exists on his facial challenge.

Dr. Kloch also asserts that the statutes are unconstitutional because application of the statutes to him resulted in public censure violative of due process.  Dr. Kloch maintains Nebraska law does not permit the Attorney General or the Board to issue public censures; only the Department may issue censures and only after the physician has been afforded due process.  Dr. Kloch argues the defendants applied the statues to him and unlawfully censured him "under the guise of a letter of concern."  Filing No. 61.  Dr. Kloch asserts that no genuine issue of material fact exists and asks this court to grant him summary judgment on his "as applied" claim.

Finally, Dr. Kloch maintains that he is entitled to partial summary judgment on his due process claim because no genuine issue of material fact exists that Dr. Kloch received an official public reprimand with his only remedy being this lawsuit.  Dr. Kloch further alleges that defendants denied him due process of law in the issuance of the letter of concern and that the violation is ongoing due to continued publication of the letter and lack of forum to challenge the allegations.  Dr. Kloch asks that if this court grant his request for partial summary judgment, the court grant him declaratory and injunctive relief and reserve the issue of damages, costs, and attorney fees for a later date.

**Defendants' Response to Dr. Kloch's Motion for Partial Summary Judgment**

Defendants responded to Dr. Kloch's motion for partial summary judgment claiming that Dr. Kloch is not entitled to summary judgment on his due process claim because he failed to identify that he suffered deprivation of some life, liberty, or property interest.  Filing No. 64.  Further, defendants allege that Dr. Kloch received notice and an opportunity to be

8

heard by the Board, both before and after issuance of the letter of concern.  Defendants maintain that the letter of concern is not public censure, and cite law from other courts supporting their proposition that letters of concern are nondisciplinary and not subject to review by an agency or court.  Defendants assert that Nebraska lawmakers enacted the Uniform Licensing Law to provide for the health, safety, and welfare of Nebraska citizens, and therefore, the statutes are rationally related to a legitimate state interest.  Defendants claim they did not act "truly irrationally" as to violate Dr. Kloch's due process; rather, they legitimately and in good faith issued the letter of concern pursuant to a valid state statute. Defendants request that this court deny Dr. Kloch's request for summary judgment as the statutes are facially valid and appropriately applied to Dr. Kloch.

**Defendants' Motion for Summary Judgment,** Filing No. 36

Pursuant to Federal Rule of Civil Procedure 56(b), defendants filed their motion for summary judgment arguing that Dr. Kloch's case reveals no genuine issue as to any material fact; that defendants are entitled to absolute and qualified immunity; and that defendants are entitled to judgment as a matter of law.   In their motion, defendants contend that Dr. Kloch is unable to establish a violation of due process sufficient to survive qualified immunity.  Defendants further argue that Dr. Kloch did not possess a property or liberty interest requiring due process prior to the issuance of the letter of concern. Defendants maintain letters of concern are not a form of discipline.   According to defendants, Dr. Kloch has no property or liberty interest in the expunging of the letter of concern because Dr. Kloch can still practice medicine in Nebraska, and his practice has not been prohibited or interrupted.  Defendants claim the issuance of the letter of concern

9

did not alter Dr. Kloch's employment or status, and therefore, it did not deprive Dr. Kloch of a liberty interest in reputation.

Alternatively, defendants argue that even if Dr. Kloch had a constitutionally protected liberty interest violated by issuance of the letter of concern, Dr. Kloch did not possess a clearly established right at the time of the issuance of the letter. Defendants maintain that neither the Supreme Court, the Court of Appeals for the Eighth Circuit, nor the Nebraska Supreme Court has ever found a property interest in a "clean" medical license or freedom from issuance of a non-disciplinary letter of concern. Defendants state that defendants acted with the authority granted them by statute and regulation, and no genuine issue of material fact exists as to whether defendants should have known their alleged conduct violated Dr. Kloch's rights.

Furthermore, defendants maintain the Attorney General never conducted an adversarial prosecutory process; rather, the Board acted in an investigatory and advisory manner and therefore, Dr. Kloch was not entitled to full due process rights. Defendants argue that Dr. Kloch received the opportunity to submit information and documents to the Board prior to the issuance of the letter of concern, appear before the Board after issuance of the letter, and Dr. Kloch does not challenge the process he received.

Defendants contend defendant David A. Dryburgh's ("Dryburgh") name was not listed as a signatory to the letter of concern and he had no role in its issuance. Therefore, defendants assert no genuine issue of material fact exists that Dr. Kloch fails to state a claim against Dryburgh. Additionally, defendants note defendant Richard Nelson ("Nelson") served as former director of the Department, and defendant Richard Raymond ("Raymond") served as former acting director and Chief Medical Officer of the Department.

As such, defendants argue that neither Nelson nor Raymond were involved in the issuance of the letter of concern, as the letter involved a non-disciplinary action.

Defendants maintain summary judgment is warranted as Dr. Kloch failed to state a cause of action against defendant Jon C. Bruning ("Bruning") because Bruning did not serve as Nebraska Attorney General at the time Dr. Kloch received his letter of concern. According to defendants, Don Stenberg ("Stenberg") served as the Nebraska Attorney General at the relevant time period.  Stenberg, defendants contend, acted in more than an investigatory or administrative manner by approving the issuance of the letter of concern, an act Nebraska Law authorizes the Attorney General to perform.  Therefore, defendants maintain actions taken by the Attorney General are prosecutorial in nature.

**Dr. Kloch's Response to Defendants' Motion for Summary Judgment**

In response to defendants' motion for summary judgment, Dr. Kloch contends he did not receive any process, let alone minimal process.  Furthermore, he argues a letter of concern qualifies as both "censure" and "public reprimand."  Dr. Kloch agrees with the defendants that Nebraska law identifies a letter of concern as a non-disciplinary measure. However, Dr. Kloch asserts that no substantive difference exists between a letter of concern and a censure, because both "operate to publicly admonish and condemn specified conduct."  Filing No. 61.  Dr. Kloch claims that he has met his burden and alleged sufficient facts to establish a constitutional violation.

Dr. Kloch further maintains that defendants are not entitled to qualified immunity because defendants' conduct violated both Dr. Kloch's statutory and constitutional rights. Dr. Kloch alleges that issuance of the letter of concern amounted to public censure, and that defendants should have known the law governing such conduct, including due process

11

requirements.  Dr. Kloch contends his argument is not that he received a non-disciplinary letter of concern; rather, he claims he was publicly censured without due process of law. According to Dr. Kloch, defendants failed to afford Dr. Kloch due process prior to undergoing disciplinary measures, and a genuine issue of material facts exists concerning defendants' knowledge that their conduct violated Dr. Kloch's established rights.

Dr. Kloch claims that defendants' actions were not purely investigatory; rather, Dr. Kloch contends that without affording him due process, defendants underwent a disciplinary process after conducting an investigative function.  Dr. Kloch argues that prior to the issuance of the letter of concern, he received a letter informing him that a complaint had been filed against him and that an investigation was underway.  Such notice, Dr. Kloch maintains, is not sufficient "process," and his subsequent five and ten-minute appearances before the Board did not constitute hearings in the context of post-deprivation adversarial proceeding.  Dr. Kloch contends the Board acted with the Attorney General to issue him a letter of concern, establish what information would be included in the letter, and determine what substantive information would be made available to the public.  This, Dr. Kloch asserts, amounted to public censure and discipline without affording Dr. Kloch the opportunity to respond.

According to Dr. Kloch, defendant Dryburgh is properly included in this action because he is a current member of the Board, and therefore, a successor to those who signed the letter of concern.  Dr. Kloch also argues that defendant Nelson is a proper party to the action because he served as director of the Department at the time Dr. Kloch received the letter of concern, and defendant Raymond is a proper party because he served as acting director of the Department at the time Dr. Kloch brought suit.  Dr. Kloch

12

asserts that the Department was responsible for the general administration of the activities of the Board, and that claims against supervisory officials who encourage or allow unconstitutional practices are permissible.

Furthermore, Dr. Kloch maintains that defendant Bruning is not entitled to absolute immunity because he is the successor to Stenberg, the Attorney General at the time Dr. Kloch brought this action.  Dr. Kloch argues the Attorney General acted in an administrative or investigative, rather than prosecutorial manenr, when he recommended issuance of the letter of concern and approved the content thereof.  Dr. Kloch contends Bruning is not entitled to absolute immunity because the Attorney General did not initiate the prosecution; rather, the Attorney General referred the disciplinary matter to the Board and served an advisory role that does not fall within the gamut of absolute immunity.  Dr. Kloch claims the injunctive relief he seeks is directed at the current Attorney General, Bruning, and if the court finds Bruning is entitled to absolute immunity, immunity extends only to Dr. Kloch's damages claims.

### DISCUSSION

### A.      Federal Rule of Civil Procedure 56(b)

The summary judgment rule is designed to isolate and dispose of factually unsupported claims or defenses.  *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997).  A motion for summary judgment is granted when the court determines there is no genuine issue of material fact, and the undisputed facts warrant judgment for the moving party as a matter of law.  Fed. R. Civ. P. 56(c); *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995).  The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party.  Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress*

13

& Co., 398 U.S. 144, 157 (1970).  In ruling on a motion for summary judgment, a court views all facts in the light most favorable to the nonmoving party and gives the nonmoving party the benefit of all reasonable inferences.  *Prudential*, 121 F.3d at 366.  If the defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence. *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational Inc.*, 825 F.2d 167, 174 (8th Cir. 1987).

A court must not weigh evidence or make credibility determinations, but must focus on whether a genuine issue of material fact exists for trial.  *Kenney v. Swift Transp. Co.*, 347 F.3d 1041, 1044 (8th Cir. 2003); *see Roberts v. Browning*, 610 F.2d 528, 531 (8th Cir. 1979); *see also United States v. Porter*, 581 F.2d 698, 703 (8th Cir. 1978).  A material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court should deny summary judgment where the evidence supports conflicting conclusions. *Kells v. Sinclair Buick-GMC Corp. Truck, Inc.*, 210 F.3d 827, 830 (8th Cir. 2000); *Johnson v. Minnesota Historical Soc.*, 931 F.2d 1239, 1244 (8th Cir. 1991).  A court further determines materiality of a disputed fact from the substantive law governing the claim. *Anderson*, 477 U.S. at 248.  "Disputes over facts that might affect the outcome of the lawsuit according to applicable substantive law are material."  *Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998).

Once a defendant meets its initial burden of showing there is no genuine issue of material fact, the plaintiff may not rest upon the allegations of his or her pleadings; rather, the plaintiff must set forth specific facts, by affidavit or other evidence, showing that a

14

genuine issue of material fact exists.  *See* Fed. R. Civ. P. 56(e); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998).  In order to survive summary judgment, the nonmoving party must make a sufficient showing concerning every essential element of the case on which the nonmoving party bears the burden of proof.  *Osborn v. E.F. Hutton & Co.*, 853 F.2d 616, 618 (8th Cir. 1988); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "If the allegations do not establish a constitutional violation, then we do not need to inquire any further into qualified immunity."  *Putnam v. Keller*, 332 F.3d 541, 546 (8th Cir. 2003).

**B.     Due Process**

The sufficiency of the process due varies with the nature of the deprivation.  *Arcoren v. Peters*, 829 F.2d 671, 675 (8th Cir. 1987); *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895 (1961).  The "root requirement" of the Due Process Clause is that an individual be given an opportunity for a hearing before the individual is deprived of any appreciable property interest.  *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 542 (1985); *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004); *Boddie v. Connecticut*, 401 U.S. 371, 378-79 (1971); *Clark v. Kansas City Missouri Sch. Dist.*, 375 F.3d 698, 702 (8th Cir. 2004) (due process requires "the opportunity to be heard at a meaningful time and in a meaningful manner." (internal citations omitted)).  *See also Shelton v. Consumer Prods. Safety Comm'n*, 277 F.3d 998, 1007 (8th Cir. 2002) (*citing United States v. Florida E. C. R. Co.*, 410 U.S. 224, 241 (1973) for the proposition that a hearing under the "Administrative Procedure Act requires that parties have fair notice of what agency intends to do and that parties have opportunity to comment; but 'hearing' does not require oral

15

testimony, cross-examination, or oral argument.")   Thus, due process requires, at minimum, notice and an opportunity to respond.  *Herts v. Smith*, 345 F.3d 581, 587 (8th Cir. 2003).   Due process requires a hearing before an impartial decisionmaker at a meaningful time, and in a meaningful manner, and a post-deprivation hearing may satisfy due process requirements.  *Rumery v. Outboard Marine Corp.*, 172 F.3d 531, 537 (8th Cir. 1999);  *Franco v. Moreland*, 805 F.2d 798, 801 (8th Cir. 1986); *Loudermill*, 470 U.S. at 542 n.7.

The doctrine of "substantive due process" holds that the Fourteenth Amendment's Due Process Clause protects unenumerated liberties, and "prohibits States from infringing fundamental liberty interests, unless the infringement is narrowly tailored to serve a compelling state interest."  *Tennessee v. Lane*, 541 U.S. 509, 562 (2004);  *Lawrence v. Texas*, 539 U.S. 558, 593 (2003).   A complainant asserting a substantive due process claim must allege that the government acted "truly irrational" - something more than arbitrary, capricious, or in violation of state law.  *Young v. City of St. Charles*, 244 F.3d 623, 628 (8th Cir. 2001).   The court finds that in this case, the defendants' actions in issuing Dr. Kloch's letter of concern do not qualify as "sufficiently outrageous," or "truly irrational," as their actions do not "shock the conscience" or "offend judicial notions of fairness or human dignity."  *Young*, 244 F.3d at 628.   Accordingly, the court's remaining analysis will address Dr. Kloch's procedural due process allegations.

Procedural due process imposes restraints on governmental decisions that deprive individuals of liberty or property interests.  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). The first step in analyzing a procedural due process claim is to determine whether the alleged individual interest is encompassed within the Fourteenth Amendment's protection

of life, liberty or property. *Ingraham v. Wright*, 430 U.S. 651, 672 (1977). The second step of the analysis inquires whether the state deprived the plaintiff of that interest without due process of law. *Krentz v. Robertson Fire Protection Dist.*, 228 F.3d 897, 902 (8th Cir. 2000).

Property interests are created and defined by existing rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). The existence of a property interest must be determined with reference to state law. *Winegar v. Des Moines Indep. Community Sch. Dist.*, 20 F.3d 895, 899 (8th Cir. 1994). State law can create property interests by establishing procedural requirements imposing substantive limitations on the exercise of official discretion. *Stauch v. City of Columbia Heights*, 212 F.3d 425, 429 (8th Cir. 2000). *See also Larocca v. State Bd. of Registration for the Healing Arts*, 897 S.W.2d 37, 42 (Mo. Ct. App. 1995) (applying Missouri law to find that a doctor had a property interest in his license to practice medicine); *Marler v. Missouri State Bd. of Optometry*, 102 F.3d 1453, 1456 (8th Cir. 1996) (applying Missouri law and stating that plaintiff had a property interest in his optometry license). "Statutes or policies that are only procedural, or that grant to a decision maker discretionary authority in their implementation . . . do not create protected property interests." *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999).

Among other things, liberty guarantees the right of the individual to contract and the right of an individual to engage in any of the common occupations of life. *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923). *See also Greene v. McElroy*, 360 U.S. 474, 492 (1959) ("the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property'

concepts of the Fifth Amendment.").  A plaintiff asserting a procedural due process claim for the loss of a protected liberty interest must show: (1) that the plaintiff was stigmatized by the allegations; (2) that defendants made the allegations public; and (3) that plaintiff denied the allegations.  *Putnam v. Keller*, 332 F.3d 541, 546 (8th Cir. 2003).  An injury to reputation alone is not a protected liberty interest under the Due Process Clause.  *Siegert v. Gilley*, 500 U.S. 226, 233 (1991).  However, an injury to reputation coupled with the alteration of a right or status recognized by law, such as eligibility for federal contracts, may give rise to a protected liberty interest.  *Redondo-Borges v. United States HUD*, 421 F.3d 1, 8 n.3 (1st Cir. 2005); *Ferencz v. Hairston*, 119 F.3d 1244, 1249 (6th Cir. 1997).  *See also Smith & Wesson v. United States*, 782 F.2d 1074, 1081 (1st Cir. 1986) (noting that although the right to bid on a government contract is not a protected property interest, a bidder's liberty interest is implicated when a deprivation is based on stigmatizing charges); *ATL, Inc. v. United States*, 736 F.2d 677, 682-83 (Fed. Cir. 1984) (finding that a suspension premised on misconduct can deprive a contractor of a liberty interest);  *Old Dominion Dairy Products, Inc. v. Secretary of Defense*, 631 F.2d 953, 962-63 (D.C. Cir. 1980) (establishing that the deprivation of a protected liberty interest occurs when stigmatizing allegations effectively foreclose freedom to compete for future contracts).

The party challenging a statutory scheme bears the burden of demonstrating its unconstitutionality.  *Lujan v. G & G Fire Sprinklers*, 532 U.S. 189, 198 (2001).  A facial challenge to a statute is the most difficult challenge to mount successfully, because the challenger must demonstrate that no set of circumstances exists under which the statute would be valid.  *United States v. Salerno*, 481 U.S. 739, 745 (1987).  The ultimate question in statutory interpretation is whether the statute can be construed in such a manner that

it can be applied without infringing upon constitutionally protected rights.   *Planned Parenthood of Mid-Missouri & E. Kan., Inc. v. Dempsey*, 167 F.3d 458, 461 (8th Cir. 1999). So long as a court is faithful to legislative intent, the court may issue a declaratory judgment and an injunction prohibiting the statute's unconstitutional application.   *Ayotte v. Planned Parenthood*, 546 U.S. 320 (2006).   When a state law is challenged on due process grounds, courts inquire "whether the state has deprived the claimant of a protected property interest, and whether the state's procedures comport with due process."   *Lujan*, 532 U.S. at 195.   Courts examine the procedural safeguards built into the statutory or administrative procedure effecting the deprivation, and any remedies for erroneous deprivations provided by statute.   *Lowe v. Scott*, 959 F.2d 323, 340 (1st Cir. 1992).   A physician has a property interest in a license to practice medicine, and a state may not deprive a physician of that interest without due process of law.   *Sabow v. United States*, 1996 U.S. App. LEXIS 27829 (9th Cir. 1996) (*citing Suckow v. Alderson*, 187 P. 965, 966 (Cal. 1920) ("The right to practice medicine is, like the right to practice any profession, a valuable property right, in which, under the constitution and laws of the state, one is entitled to be protected and secured.")); *Lowe*, 959 F.2d at 334 (a license to practice medicine is a valuable property right protected by the Fourteenth Amendment); *Dent v. West Virginia*, 129 U.S. 114, 121-22 (1889).   "[A] professional license, once conferred, constitutes an entitlement subject to constitutional protection."   *Gallo v. United States Dist. Court*, 349 F.3d 1169, 1179 (9th Cir. 2003).   Furthermore, state regulation of occupations through a licensing process gives rise to protected property interests.   *Watts v. Burkhart*, 854 F.2d 839, 842 (6th Cir. 1988).   The court agrees with both parties that Dr. Kloch has a property interest in his medical license protected by due process.

19

Before the court is Dr. Kloch's submission of the document the Department allegedly disseminates to the public setting forth the process the defendants follow in receiving and investigating complaints against physicians.  Filing No. 60, Attachment 4 ("exhibit 5A"). After review of the evidence, the court finds that the Department's complaint/disciplinary scheme, although not statutorily required or subject to any published regulations, provides licensee notification prior to issuance of a letter of concern.  *See* Filing No. 60, Attachment 4 ("exhibit 5A"); Filing No. 60, Attachment 2, ("exhibit 3A") ("there are no regulations on Letters of Concern").   The evidence suggesting that Dr. Kloch received such notice includes Nurse Rydberg's letter to Dr. Kloch notifying him of an unspecified complaint against him and requesting his Curriculum Vitae.  *See* Filing No. 60, Attachment 1 ("exhibit 2A").[4]  Accordingly, the court finds the evidence is insufficient to prove that Dr. Kloch received adequate notice that a complaint had been issued against him since it never informs him of the nature of the complaint.

The remaining due process issue before the court is whether Dr. Kloch received an opportunity to respond to the allegations against him.  The Uniform Licensing Law permits the Attorney General, upon referral of a complaint by the Department, to elect to file a petition, negotiate a voluntary surrender or voluntary limitation, or refer the matter to the appropriate professional board to resolve the matter by issuing a letter of concern.  Neb. Rev. Stat. § 71-171.01 (2007).   According to the Department's complaint/disciplinary scheme, the Attorney General may request further investigation or request temporary

---

[4]Additionally, James Smith, an Assistant Attorney General for the State of Nebraska who reportedly approved Dr. Kloch's letter of concern, alleges that the investigative notes submitted to the Attorney General reflect a comment by the Department's investigator that the investigator notified Dr. Kloch of the investigation and invited Dr. Kloch to submit a response, but that Dr. Kloch declined to submit a response.  Filing No. 38, Attachment 1, ¶ 15.  The court does not find this comment substantiated by the evidence.

suspension on limitation, and the Chief Medical Officer may then determine which of the following is warranted: dismissal, discipline, revocation, probation, civil penalty (fine), suspension, limitation, or censure (reprimand). Filing No. 60, Attachment 4 ("exhibit 5A"). A person facing such a range of consequences, in this court's judgment, must at a minimum be provided a chance to confront adverse evidence, present evidence, and question adverse witnesses. *See Webb v. State ex rel. Ariz. Bd. of Med. Exam'rs*, 48 P.3d 505, 508 (Ariz. Ct. App. 2002).

The court notes that the difference between this last option, "censure (reprimand)," and the characterized "non-disciplinary" option of "letter of concern" lies in the amount of procedure contemplated by the existing scheme. As it exists now, the censure (reprimand) option requires prior notice and an administrative hearing, whereas a letter of concern requires only complainant notification. *See* Neb. Rev. Stat. § 71-150 (2007). Nor does the scheme afford the accused procedures to exonerate him or herself before or after issuance of a letter of concern. The court is troubled with the lack of apparent difference between censure and a public letter of concern. Censure is a statement by a governmental entity that may preclude the person subject to the censure from denying, in any future proceedings, that the person committed the wrong ascribed to him or her. *Fleury v. Clayton*, 847 F.2d 1229, 1232 (7th Cir. 1988). Professional censure is a form of deprivation. *Webb*, 48 P.3d at 508.

Kloch's public letter of concern essentially amounts to censure as he is precluded from denying the allegations against him, and the Board may consider the letter of concern should Kloch be the subject of any future disciplinary matters. The letter of concern is referenced on the Department's website and is available to anyone who requests a copy.

21

Although it is characterized as "non-disciplinary," the court is hard-pressed to believe that the effect of a letter of concern differs in any substantive respect to a public censure or reprimand.  Clearly, the purpose behind the Uniform Licensing Law is to protect the public from unscrupulous medical providers, and ensure the public has the proper information when selecting a physician.  A public letter of concern informs the public that a physician has departed from a standard of care promulgated by the state.  Comparatively, a reprimand warns consumers that a physician has acted in a manner not in conformity with the rules governing the state's medical profession.  The court also notes that issuance of a public letter of concern may create serious ramifications for the accused, namely, insurability issues, decreased professional credibility, or potential loss of Patients.  Fred M. Zeder, *Defending Doctors in Disciplinary Proceedings*, Ariz. Attorney Jan. 2004, at 22 ("Doctors who are placed on probation, issued letters of reprimand or censure or who have their licenses or hospital privileges restricted may find that they are ineligible for reimbursement for services provided to health plan patients, or they may lose their malpractice insurance. If a doctor loses his malpractice insurance and can't find or afford a replacement carrier, he will find himself ineligible to hold hospital privileges.")

        In the court's opinion, characterizing a letter of concern as "non-disciplinary" does not limit the effect of its intended consequence.  *Cf. Colorado Bd. of Medical Examiners v. B.L.L.*, 820 P.2d 1190 (Colo. Ct. App. 1991) (court finds that physician who receives a letter of concern suffers no adverse consequences because the letter of concern is confidential, and the physician need not reveal its existence or contents to third parties). If the state of Nebraska intends to make public a letter of concern informing its citizens that a physician has not comported with a standard of care sufficient to warrant such a letter,

the physician, at minimum, should be entitled to notice and an opportunity to respond to such allegations.

Because Nebraska's complaint/disciplinary framework advances such a public letter of concern without affording both notice and an opportunity to respond prior to issuance of the letter of concern, the court finds the licensing scheme invalid and unconstitutional. In the recent Eighth Circuit case *Buser v. Raymond*, Judge C. Arlen Beam wrote a concurring opinion expressing his concern over Nebraska's Uniform Licensing Law. *Buser v. Raymond*, 476 F.3d 565, 572 (8th Cir. 2007) (Beam, J., concurring). Judge Beam notes with concern that a limited amount of review is available to litigants in the Nebraska system. *Id.* at 572 (Beam, J., concurring). He further states that Nebraska should carefully consider how it carries out its disciplinary process to ensure that all litigants are afforded ample due process. *Id.* (Beam, J., concurring). The court agrees that the current licensing framework provides insufficient safeguards to protect a property interest in a medical license. Accordingly, the complaint/disciplinary scheme is procedurally infirm on its face.

The court finds that §71-171.02 of the Uniform Licensing Law is invalid both facially and as applied in this case as Dr. Kloch received a letter of concern without both notice and an adequate opportunity to respond. Although the parties disagree over whether Dr. Kloch received an opportunity to respond at the time he received notice of the complaint against him, the court finds that an opportunity to respond to an investigator is not adequate opportunity to be heard. The investigator may have made recommendations, but it was not the investigator who determined whether Dr. Kloch should receive a letter of concern, a civil penalty, or whether Dr. Kloch should have been suspended from his practice. This court holds that the investigation in this case did not satisfy Dr. Kloch's

23

procedural due process rights. Dr. Kloch received no opportunity to fully and fairly test the evidence against him before the Board imposed a permanent and public sanction. De facto hearings may have given Dr. Kloch an opportunity to respond after the Board decided to issue the letter of concern. However, these de facto hearings are not provided for by statute or regulation. *See* Filing No. 60, Attachment 2, ("exhibit 3A") ("there are no regulations on Letters of Concern"). The court finds that the complaint/disciplinary framework is defective and that Dr. Kloch has the right to have the statutes governing his property right, his medical license, comport with constitutional due process requirements. As such, the court grants summary judgment in favor of Dr. Kloch and finds the statute unconstitutionally infirm and invalid both facially and as applied.

**Immunity**

The court turns next to the immunity issues in this case. Qualified immunity provides that government officials are shielded from liability in their individual capacity "for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A qualified immunity defense "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). A prosecutor is entitled to qualified immunity when performing actions in an investigatory or administrative capacity. *Anderson v. Larson*, 327 F.3d 762, 768 (8th Cir. 2003). Whereas, prosecutors are entitled to absolute immunity from civil liability for prosecutorial functions such as initiating and pursuing criminal prosecution, presenting the state's case at trial, and other conduct closely associated with the judicial process. *Id.* The Eighth Circuit Court of Appeals recently stated that the "purpose of absolute immunity is to insulate officials performing quasi-judicial functions

from liability for alleged unconstitutional acts." *Buser v. Raymond*, 476 F.3d 565, 570 (8th Cir. 2007). To determine whether absolute or qualified immunity applies, courts examine the nature of the function performed, rather than the identity of the actor who performed it. *Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006).

Here, the members of the Board signed the complaint against Dr. Kloch, the Department consulted with the Board, and the Department made its recommendation to the Attorney General. The Attorney General was tasked with determining what regulations Dr. Kloch violated and the appropriate action to institute against Dr. Kloch. The acts of signing a letter of concern and investigating a complaint constitute administrative functions, as they further regulation of the practice of medicine in Nebraska. The Board members and Department members were not acting in blatant violation of state law; rather, they were acting to make their recommendation to the Attorney General who in turn enforced the Uniform Licensing Law. As such, the Board and Department members are entitled to qualified immunity as they were not tasked with, and could not know, that such a licensing/complaint scheme was invalid. Therefore, defendants' summary judgment is granted in part, and the court finds that the Board members, defendant Dryburgh, defendant Nelson, and defendant Raymond are entitled to qualified immunity.

Defendant Bruning currently serves as the Nebraska Attorney General and enforces the laws of the state. The court finds that although Stenberg served as the Attorney General at the time of Dr. Kloch's letter of concern, injunctive relief is appropriate against the Attorney General currently enforcing an invalid licensing complaint/disciplinary scheme. Therefore, the court finds that defendant Bruning is properly named in the suit, and that Bruning is not entitled to either qualified or absolute immunity. "The acts of preparing, signing, and filing a criminal complaint constitute prosecutorial functions, as they are

advocacy on behalf of the government." *Schenk*, 461 F.3d at 1046.  The court finds that in this case, the Attorney General did not act in a judicial capacity as he did not initiate a prosecution or engage in functions closely tied to the judicial system.  Rather, the court finds that the Attorney General's actions in referring the disciplinary matter back to the Board to consider issuing a letter of concern, and approving the content of the letter, are administrative and advisory in nature.  However, the Attorney General is not entitled to qualified immunity because the Attorney General clearly violated an established constitutional right "of which a reasonable person would have known." *Harlow*, 457 U.S. at 818.  The Attorney General, an elected official with a legal education and background, should understand that affecting a property right without notice and an opportunity to be heard violates Nebraska Constitution Article I, Section 3, and United States Constitution amendments V and XIV.  Defendant Bruning is responsible for continuing to enforce an unconstitutional statute, and therefore, Bruning is not entitled to qualified immunity.  Defendants' motion for summary judgment as to Bruning is denied.

Dr. Kloch asks that if this court granted partial summary judgment, the court grant him declaratory and injunctive relief and reserve the issue of damages, costs, and attorney fees for a later date.  Accordingly, the court declares §71-171.02 of the Uniform Licensing Law unconstitutional on its face and as it is applied to Dr. Kloch.  The court enjoins Bruning and his successors from continuing to implement §71-171.02 of the Uniform Licensing Law and orders Bruning and the Department to cease disseminating the letter of concern issued to Dr. Kloch, to rescind the letter, and to expunge any references to the letter from Dr. Kloch's public records.  The court refers this matter to Magistrate Judge Thalken for further progression of the case.

THEREFORE, IT IS HEREBY ORDERED that partial summary judgment is granted in favor of Dr. Kloch on the issue of due process, Filing No. 59, and defendants' motion for summary judgment, Filing No. 36, is granted in part and denied in part as set forth herein.

DATED this 30th day of March, 2007.

BY THE COURT:


s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
Chief United States District Judge